UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Vincent Bernard Bennett,　　　　　　　　　　　　　　　Case No.: 11-56173-wsd
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 13
　　　　Debtor.　　　　　　　　　　　　　　　　　　　　Hon. Walter Shapero
_____/

**OPINION INCIDENT TO MOTION FOR SANCTIONS (DKT. 89) AND MOTION TO SET ASIDE ORDER (DKT. 92)**

In March of 2011, Debtor started receiving assistance from the Detroit Residential Water Assistance Program ("DRWAP") on his Detroit Water and Sewerage Department ("DWSD") bills in the form of a $10 monthly credit toward the water balance and a $16 monthly credit toward the sewer balance. On April 1, 2011, Debtor received a $299.07 DRWAP credit. On June 9, 2011, Debtor filed this Chapter 13 petition. On July 8, 2011, Debtor filed his schedules, including listing a debt to DWSD in the amount of $1,284.98. On that same date, Debtor proposed a 36 month Chapter 13 plan, proposing to pay DWSD $1,284.98 (plus interest) via the Chapter 13 Trustee. On August 18, 2011, Debtor filed an amended plan, proposing the same treatment to DWSD. On September 22, 2011, Debtor received a $299.07 DRWAP credit. On February 3, 2012, the Court entered an order confirming Debtor's amended plan. On January 2, 2013, DWSD began receiving distributions from the Chapter 13 Trustee, and then on January 7, 2015, Debtor filed a Motion to Compel DWSD to return to the Trustee the $1,596.42 it had received from the Trustee since January 2013. No response having been filed, on January 30, 2015, the Court entered an order ("January Order") compelling DWSD to return the $1,596.42 to the Chapter 13 Trustee. On April 3, 2015, Debtor filed a Motion (Dkt. 89) seeking, among other things, an order compelling DWSD to return said funds to the Chapter 13 Trustee pursuant to the

1

January Order and for sanctions against DWSD for violation of that order. On April 16, 2015, DWSD filed a Motion to Set Aside the January Order (Dkt. 92). Debtor's DWSD account is currently in a substantial surplus, though the exact amount may be disputed (DWSD claims that as of April 2015, the surplus was $837.73).

Debtor wants the $1,596.42 disbursed by the Chapter 13 Trustee to DWSD to be returned to the Trustee and then paid to Bank of America, a mortgagee creditor under the plan. Debtor asserts that DWSD received payments from various sources: (a) through the Chapter 13 Trustee for the pre-petition debts; (b) through post-petition direct payments by Debtor and Debtor's father on Debtor's behalf; and (c) through pre and post-petition DRWAP assistance. Debtor argues it is almost impossible to track how DWSD applied the various funds to Debtor's account. Debtor views the current situation, particularly the fact that his DWSD account shows a substantial surplus, due at least in part to the distributions under the plan, as having created a "windfall" for DWSD. Debtor relies on the doctrine of recoupment as his primary basis for recovery.

DWSD first argues that the January Order should be set aside because it did not receive notice of the underlying motion and because the January Order violates the City of Detroit's Chapter 9 discharge (the City of Detroit, of which DWSD is part, filed a Chapter 9 petition on July 18, 2013, resulting in a discharge on December 10, 2014). DWSD also argues that Debtor is bound by his confirmed plan, which proposed payments to DWSD on the undisputed debt via the Chapter 13 Trustee (which is what in fact occurred). DWSD argues that the surplus in the Debtor's DWSD account is the result of the DRWAP assistance credits, not the result of any overpayments made by the Debtor or the Chapter 13 Trustee. DWSD disagrees with Debtor's interpretation and application of the recoupment doctrine, as will be discussed further.

It is undisputed that money was paid into the Debtor's DWSD account from various sources and that the account now has a surplus. Determining the sources of and how the surplus was arrived at is not relevant. The dispositive fact here is that the Debtor's debt to DWSD was in fact wholly paid, regardless of the source of the funds by which it was paid. Recoupment, upon which Debtor relies, is used to reduce or extinguish a debt arising from the same transaction. In re Delicruz, 300 B.R. 669, 680 (Bankr. E.D. Mich. 2003). Here, the Debtor presently owes no debt to DWSD and there is nothing to reduce or extinguish. Debtor has not persuaded the Court that the recoupment doctrine entitles him to the requested relief, which essentially amounts to a credit refund that goes beyond the reduction or elimination of a debt.

Reinforcing this conclusion is the Debtor's contributing responsibility for the existence of the surplus in his DWSD account. Debtor was solely responsible for filing a Chapter 13 plan. 11 U.S.C. § 1321. Debtor's plan contemplated and proposed DWSD being paid in full on its debt via the Chapter 13 Trustee, and he had applied for and had received pre-petition and post-petition DRWAP credits. The confirmation of Debtor's plan was a final judgment and Debtor should not have been surprised that such amounts were paid to DWSD pursuant to his plan. Further, Debtor knew, or should at least have reasonably considered the possibility, that DRWAP assistance, together with payments from the various other sources, might cause surplus payments into his DWSD account. The surplus is the result of various monies having come into Debtor's DWSD account, either upon the affirmative payment by him or by way of DRWAP assistance that he should have anticipated. Further militating against Debtor's requests are that (a) notwithstanding the accrual and receipt of the credits pursuant to his application for same, Debtor for a substantial period of time did nothing about the Trustee continuing to pay DWSD pursuant to the terms of the confirmed plan (aware of the existing and accruing credits, Debtor could have timely applied

to modify the plan to account for those facts); and (b) the surplus in the account is not lost, but would be treated as advance payments on his account that relieve him from making payments on accruing bills (and it is possible, depending on DWSD's policies, that if Debtor's account is closed for whatever reason, any remaining surplus might be refunded to Debtor, rather than being forfeited to DWSD). In the Court's opinion, DWSD does not receive a "windfall" by obtaining exactly what the confirmed plan provides. In one sense, Debtor's argument could be seen as somewhat of a windfall for him by allowing him to violate the specific terms of his own plan and divert the distributions earmarked for DWSD to another creditor. While the Court understands why the Debtor would in effect prefer to have that alternate use of the funds at issue, the correct view of the situation does not warrant that result. Therefore, the Court will deny Debtor's Motion, at least as it seeks to compel DWSD to return funds to the Chapter 13 Trustee and to obtain sanctions against DWSD for violation of the January Order. An order to that effect is being entered.

As to DWSD's Motion to Set Aside the January Order, there appears to still be some dispute as to whether or not it should be granted by reason of Debtor having failed to appropriately serve the motion underlying the January Order. However, because the Court has herein essentially substantively ruled that the relief granted by the January Order (i.e. that DWSD turn over the funds to the Chapter 13 Trustee) is inappropriate, that matter is mooted to some extent. To eliminate any ambiguities, the Court will grant DWSD's motion and DWSD shall present an order to that effect.

.

**Signed on June 23, 2015**

                                  **/s/ Walter Shapero**
                          **Walter Shapero**
                          **United States Bankruptcy Judge**